## Margulis v. Binenstock, Appellant.

Argued December 7, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Chester N. Farr,* with him *Moss & Moss,* for appellant. —The court below erred in holding that defendant was bound to pay the customs duties by virtue of the original agreement and the undertaking in the warehouse receipts for the whiskey.

The legal liability for the payment of the customs duties arose at the time of the arrival of the goods in port and constituted a personal charge upon the importer or consignee: Meredith v. U. S., 13 Peters 486.

*Robert T. McCracken,* with him *Ulric J. Mengert* and *D. Arthur Magaziner,* for appellee.—The acceptance by defendant of the transfer of the warehouse receipts from plaintiff made defendant liable for the charges: Collins v. Oliver, 299 Pa. 372.

OPINION BY MR. JUSTICE DREW, January 3, 1933:

Plaintiff brought this action in assumpsit to recover the amount of certain customs duties paid by him on 83 barrels of whiskey which had been stolen from the warehouse in which they were stored. At the time of the theft the whiskey belonged to defendant, who had purchased it from plaintiff. Plaintiff recovered a verdict for the amount so paid, with interest, and from the judgment entered thereon defendant appealed.

On September 8, 1921, plaintiff and one Gallagher entered into a written agreement with defendant, whereby they agreed to sell to defendant 2,500 barrels of whiskey, which was then in France, upon its reimportation into the United States and its deposit in Trainer's Bonded Warehouse at Eddington, Pennsylvania. According to the agreement, defendant designated the warehouse in which the whiskey was to be stored, and *undertook* "to have the owners of said warehouse accept said whiskey on storage [and] issue certificates for the same, in accordance with the custom and practice of warehouses for the deposit of whiskey." The whiskey was not then owned by either party to the contract, but by the distiller, A. Overholt & Company, of Pittsburgh, and the agreement contemplated a purchase of the warehouse certificates by plaintiff and Gallagher from Overholt & Company, if the latter should be able to reimport the whiskey into the United States. Defendant was to pay $3.50 a gallon for it upon delivery of the warehouse certificates to him. There was no express provision in the written instrument in regard to the payment of import duties.

Before the whiskey could be imported into the United States, a bond was required by the government from Overholt & Company, as the importer, conditioned upon the payment of all customs duties and other charges. Overholt & Company in turn demanded of plaintiff and Gallagher a bond in its favor, indemnifying it against all loss and damage by reason of payment of the duties,

and in October, 1921, such a bond was executed. Plaintiff and Gallagher requested defendant to execute this bond in their stead; he refused to do so, but stated orally that upon the completion of the transaction by delivery of the warehouse receipts to him he would be liable for the payment of the duties, and would pay them as they became due and payable.

On November 17, 1921, the whiskey was imported by Overholt & Company and duly stored in the warehouse mentioned in the agreement, which issued to Overholt & Company its certificates* or receipts therefor. Subsequently plaintiff and Gallagher purchased the certificates from Overholt & Company, and on December 12, 1921, they delivered them to defendant and received from him the price named in the agreement. The certificates provided that the whiskey was to be delivered "only on payment by the holder or owner of this Receipt, on or before the date when the same become due, of all United States taxes......and all unpaid storage on said whiskey," and also that the warehouse was "absolved from all liability or risk of every kind in case of loss or damage to said whiskey resulting from......Burglary, Theft or Larceny; all losses or damage resulting from any of said causes it is hereby expressly agreed shall be borne by the holder or owner of this Receipt and shall be at the sole risk of such holder or owner." Thereafter defendant paid the storage charges and insurance premiums on the whiskey.

On or about September 27, 1923, 83 barrels of the whiskey, the warehouse receipts for which were still owned by defendant, were stolen from the warehouse by parties unknown. Upon demand by the United States, Overholt & Company paid the customs duties on the stolen whiskey, which amounted to $2.20 a gallon. It is conceded that the duties upon the stolen whiskey were rightfully collected by the government when the theft was discovered. Overholt & Company then sued the United States Fidelity & Guaranty Company, the surety

on the bond executed by plaintiff and Gallagher, and obtained a judgment for the amount paid by it, with interest. Defendant refused to pay the judgment when requested by plaintiff and Gallagher, and plaintiff, individually, paid it, and brought this suit against defendant to recover the amount so paid, with interest. The court below, in refusing defendant's motions for judgment n. o. v. and a new trial, held that defendant, by this written contract, and under the warehouse receipts issued as contemplated therein, had agreed to pay the duties, and that, therefore, plaintiff was entitled to recover. Defendant contends that there was no such undertaking on his part, and that the court below erred in holding that there was.

Defendant's argument, we think, has no merit. The written contract between the parties clearly expressed their intention that, after the completion of the transaction by delivery to and acceptance by defendant of the warehouse certificates, defendant was, as between the parties to the contract, to be liable to pay the customs duties. The contract contemplated that defendant should see to it that the whiskey was accepted on storage and warehouse certificates issued therefor, in the usual and customary form. The certificates were issued, and defendant accepted them when tendered by plaintiff in performance of the contract. This shows, in the clearest possible way, that the certificates were satisfactory to defendant and were such as the parties expected and intended should be issued. Indeed, defendant does not contend that they were not such as were contemplated by the contract. It was expressly stated in the certificates that the holder thereof should pay "all United States taxes" before the whiskey should be withdrawn from storage, and this was obviously meant to include customs duties. By the contract, the whiskey was to become the property of defendant, and, therefore, he was to be, as between the parties, the holder of the certificates at the time the duties became payable. As ex-

pressed in their contract, the intention of the parties was, therefore, that defendant, not plaintiff and Gallagher, should be the one to pay the duties.

The warehouse receipts issued in accordance with the contract are, in terms, agreements between the warehouseman and the holder of the receipts, but that fact does not enable defendant to escape liability. His obligation to pay the duties rests upon his contract. The warehouse receipts are strongly indicative of what the parties contemplated in their contract.

Furthermore, when it is recalled that the price defendant was to pay for the whiskey was $3.50 per gallon, while the duties thereon were $2.20 per gallon, any doubt that might be entertained as to which party to the contract was to pay the duties is removed. That the net price to the sellers would have been only $1.30 a gallon for whiskey shipped to and from Europe unless the purchaser paid the duties is almost conclusive that the parties intended that the purchaser should bear this burden.

Defendant contends that in the court below plaintiff based his right to recovery solely upon an alleged oral statement by defendant that he would pay the duties, and cannot now urge that defendant is liable for the payment of the duties under the written contract. We cannot agree to that, because the statement of claim as offered in evidence, the exhibits, and the case as a whole show clearly that plaintiff at the trial sought recovery on the ground of a written contract.

Judgment affirmed.